The case is on appeal from the District of New Jersey, and we are dividing, as I understand, the response between Mr. Lennie and Mr. Jakes, is that right? That's right, Your Honor. And who's going to go first? Oh, Mr. Jakes is going first on that one. Yes, thank you. All right. And Mr. Lombardi, you want three minutes for rebuttal. Yes, Your Honor. Okay. Okay, you may begin. Members of the Court, the District Court erred with respect to both of the claim terms at issue here because it failed to give effect to the plain language of the claims. There is nothing in the specification or the file history that justifies altering the claims in the way the District Court did in this instance. And for that basic reason, the District Court judgment should be reversed. There are two claim terms, as the Court is aware. I'll talk first about the claim term that involved reading the word sleeve into the claims. That's a claim term that we've referred to as a securement taper claim term. Can I go to the other one first? Yes, Your Honor. Because I've got more questions on that one. I'm trying to understand, I mean, you have recited that there has to be some kind of juxtaposition and that they have to be juxtaposed for a particular purpose. So, do you now agree with the District Court that we can't just interpret the term juxtaposed out of context of the rest of the language of the claim? Your Honor, while I understand that the District Court felt that we were taking juxtaposed out of context, that was never our intention. I do think juxtaposed needs to be taken in the context. And now, on appeal, we have an agreement as to what juxtaposed means. It means positioned nearby. So we have a specific indication there of where the taper and the groove, or we also call it the recess, is positioned in the shell. It's positioned nearby and the additional part of the claim that Your Honor referred to is that it has to effectively, you have to position them so that they work. So there is language concerning the positioning of the recess or the groove and the taper in the shell that is specifically in the claims. What's not in the claims is this reference to essentially midway. And that's what the District Court read in, and in our view, that was incorrect. But it says, placed at relative locations such that the effectiveness of each of the securement recess and the internal securement taper is maintained while in the presence of the other. Correct. All right. And the District Court then turns to the specification and says that the only place that you describe how to maintain the effectiveness is the place in which you talk about those tapers essentially being equal in size. And it is true, and we've conceded from the beginning, Your Honor, that the only place in the specification that talks about the placement of the groove along the taper is in two mentions of preferred embodiment. Two mentions. Well, I get that. I mean, you know, I understand the whole cardinal sin thing that you're going after here, but and so that we can't, just because it's in a preferred embodiment doesn't mean that it's the only way to do it. My problem is, I don't see any place else in the specification that you describe what gives life to this effectiveness term other than the fact that the tapers are as long as possible on each side. Right. Is there anywhere else in the patent, anywhere else in the patent, specification or not, that describes another effective? Not a literal embodiment, Your Honor, but what it does describe at Column 7 is it talks about the axial length as being important to effectiveness. So that, while it doesn't describe a specific embodiment, it describes what the person of skill and the art would need to be paying attention to in order to ensure that there's effectiveness. So how do the axial length of each tapers get maximized if it's not positioned in a way so that they're maximized on both sides? Well, the axial length could be maximized by having the groove at the very tip of the taper, the very end of the taper. Then you have the longest taper possible. It could be with the groove on the outside of the taper, but close to it, positioned nearby under the language. And you only have one taper? You would have one taper on the shell in that instance. I think in all instances, under the language of the patent, the taper on the shell is referred to as one taper. Whether it's bisected or has a groove as part of it, it's still one taper. And so the maximizing the axial length is a message to the person of skill and the art how you would position the groove in the taper to make sure that it's effective. Your Honor, I know and I understand your point about the cardinal sin, and I'm sure you hear that in many, many cases. But what I think makes this case different is that when you read essentially midway into the language, in this case, the only indicia they can point to that the invention is limited that way are preferred embodiments. The cases that they cite involve much more in the way of indicia that the positioning of the ... that the limitation should be read into the claim. So for instance, there are statements in those cases that it's the present invention or that the problem has to be solved by reference to this specific way of doing things. Or that ... It says in the taper under your argument, they could be located anywhere in the shell. No, Your Honor. Not under the plain language of the claim. They have to be positioned nearby and there's no ... and that's juxtaposed, Your Honor. And the claim and the parties agree, that's positioned nearby and that's something that further trial if necessary. They have to be positioned nearby and they have to be positioned in a way that they effectively maintain their utility as locking mechanisms. But you're talking about a first and second securing structure. Positioned nearby one another. How do we have just one long taper with the groove at the top, then only one of those structures is long? Well, the securement structures that ... the securement structures we're talking about are a securement recess, which is the groove, and a securement taper, which is the taper. And they can be positioned nearby each other if they are positioned nearby. If one is right next to the other, one ... I would submit that if they are, given the language of the specification and the claims as a whole, if they are part of the taper, if they are in the taper, they are positioned nearby. So language is provided about the location. In the cases where a limitation is read in from the specification, they are different from this case. This case does not have any statement that essentially midway is the present invention. There was no art that was avoided by reference to the location of the groove along the taper. This is a case that is different. It is a case where literally the only thing they can point to that limits the definition of the term and provides the essentially midway language of the term is a preferred embodiment. And this court has a lot of case law that says that you're not to limit the claim terms to the preferred embodiment. Let me come ... Mr. Lamar, let me come at this same problem, but from a slightly different direction. I take your point that when you read the claims, it's clear that the trial judge added something to those claims. It's not in there, not in the claims. Now, here's my puzzle. For the moment, if I read the record correctly, the defendants counterclaimed on validity. Is that correct? Yes. What happened to that counterclaim? It never got ... It never got tried because ... It never got tried because ... Right. Yes. And in fact, this whole thing was resolved basically as a result of claim constructure. Summary judge in motion that followed the claim construction. Okay. Let's assume the trial judge didn't read those conditions as to the sleeve and the midway conditions. Wouldn't you be faced with a rather serious question of indefinite? I don't, and I don't think so, your honor, because I think that the preferred embodiment does provide written description support for the claim, so I don't think there would have been an issue at that. And I think that a person of ... The evidence would have been that a person of ordinary skill in the art is fully capable of determining what position nearby is in the context of  Wouldn't that look an awful lot like the way the trial judge read the claim? I don't believe so, your honor. I think it would be broader than the way the trial judge read the claim, because essentially midway is not the only way that one of these can work, and we know that because we have examples from the real world where positioning of the groove along the taper is different than essentially midway, and it does work, so I don't believe that it would have come out the way that the trial judge read it in this particular instance. So you would resist any interpretation of the trial judge's claim construction as one way to save the claims? Yes, I would. I don't believe that that's what was going on at all in this instance. I just think it was the trial judge misapprehending the way that the law should be applied. The trial judge started the analysis with the specification rather than with the claims, and I understand that the specification is always referred to, but I think it's telling the way the trial judge went about the analysis was to begin with the specification, and it's a notable opinion, I believe, for how little time the trial judge spends talking about the claims themselves. Well, for understanding the claims, normally one might start with the specification, with what I call the written description, you could call it the specification, it doesn't matter. Normally, you might want to start with reading the written description before you get to the claims. I don't disagree with that. I guess it's a matter of preference, and I don't disagree with that, Your Honor. But I think, still, whatever the case is- You want the trial judge, when the trial judge writes the opinion, to begin with the claim. Your Honor, I'm not suggesting that that is an error that is a basis for reversal at all. I'm just suggesting that in this case, I think it is emblematic of the lack of emphasis the court brought to the claim terms themselves, and I think that that is the fundamental problem here. Judge O'Malley, I just wanted to- To the sleeve for a second? Yes. Okay. Go ahead. Oh, thank you. I think- That's where you wanted to start, so I don't want to- That's fine. Thank you very much, Your Honor. The problem with sleeve is that, in this instance, the district court added a structure that is simply not present. A sleeve is not present. There's no reference to anything resembling a sleeve. This is different than the cases that the defendants cite to here, because in all of those cases, I think the main ones were retractable, Honeywell, and Wang. There is a structure that's disclosed in the claims, and then the court looked to the specification to construe how broad that structure should be construed. But again, my problem with your argument is that, if you look at the specification, when you're talking about the metal version, every time you talk about it, you talk about it in terms of using a sleeve. That's not accurate, Your Honor. At column two, lines 41 and forward, there is a specific reference to what we refer to as the two-piece configuration, and that is a configuration that does not include a sleeve. There are at least two other references to such a configuration in the specification, and that, in fact, Your Honor, is consistent with the way this patent has been structured from the beginning. From the very original claims in this case, and those are at A1687 of the appendix, there were claims to configurations without a sleeve, and claims to configurations with a sleeve. That held true all the way up to the issued patent, where there are claims without a sleeve, and there are claims with a sleeve. The claims with a sleeve are not the ones that we asserted in this case, but they're the structure throughout. We disagree with the contention by the other side that there's no reference to a sleeve in the specification. It's there, and as I referred to, column two, and two other places that we have referenced in our briefs. Indeed, if you read the specification as including all of the claims, then that strengthens your argument. It does, and that is a point I had intended to make, Judge Plager, so yes, it's true, but it shows the intention from the beginning, where to have claims with a sleeve and without a sleeve. But isn't that because there were some claims that relate to the plastic material, and other claims that related to the hard material? There are references to plastic and the hard material in dependent claims, that is true, but that is not the reason for the structure being the way it was, and in fact, there's referring to, Your Honor, that indicates that the two-piece configuration has anything to do, two-piece meaning the configuration without a sleeve, has anything to do with the plastic or the ceramic. So it's there. It's in. Yes, Your Honor. In the Apolyse break, page 12 at the bottom, they say, apart from using a sleeve, the 243 patent does not teach any other mechanism for achieving these objectives with a hard bearing. You disagree with that? Yes, I disagree. Well, I agree in this respect, that it does teach that you can use a sleeve with a hard bearing, like a ceramic bearing, but it also teaches that you can do it without having a sleeve at all. So it is incorrect to say that a sleeve is the only way, because the patent has specific references to a configuration that does not have a sleeve. That's been the case with this patent from the time it was originally filed, and that's the reference I gave you to the file history. I believe I've made it through my time. I'll give you a rebuttal time back. Thank you, Your Honor. We've spent a lot of time on the first issue. Mr. Jakes? Thank you, and may it please the Court. Your biggest problem, I think, in both of these instances is claim differentiation. And I know why, while that's not the end of the world, here, there are very specific dependent claims that claim precisely the limitations that the trial court read into the independent claims. Well, it's true, Your Honor, the claim differentiation in this situation, there are dependent claims that do reside essentially midway. And same thing with respect to the sleeve. That's true, but just looking at the essentially midway. We know claim differentiation, it's an analytical tool, and it's not a hard and fast rule. And here, where the claim language really has no other meaning, claim differentiation has to yield. What do you mean it has no other meaning? Maybe it has no meaning at all. Well, that could be, Judge Plager. But that's not a claim construction issue, right? That's right, and looking at construing these claims, we do think that the language that you start with, it's certainly uncertain, and it's rising to the level of ambiguity. But if you take claim differentiation to its end here, then you're back to basically striker's construction, which is nearby. And then the rest of that claim language, the relative location such that their effectiveness is maintained while in the presence of the other, it has no meaning. If your friend on the other side argues that the effectiveness is maintained as long as you can maximize the length of the taper, and couldn't you argue that maximizing the length of the taper is better done by having the groove at the very end of the taper rather than midway? I don't agree, Your Honor, and for the reason is that's not what the specification says. That's not, that's a misreading of the specification. The specification says having this generally the same and therefore maximized axial length. Right, but that's a preferred embodiment. That's, well, it's saying you prefer to have the same length because that will maximize the axial length, not maximize the axial length by placing the recess outside of the taper. If you do that, then you're ignoring other claim language. You have also in the presence of the other. Tell me why maximizing axial length can only be done by having two equal lengths. Why couldn't it be done by placing it at the end of the taper? That could be, Your Honor, but that's not what the specification says. Tell me where it says that it can't be done. It says having generally the same length and therefore maximizing. Again, in the preferred embodiment. What I'm trying to understand is, you know, are we committing, are you asking us to commit the cardinal sin of claim construction and simply put the limitation from a preferred embodiment in there, or is there something in the specification that would teach us a way from maximizing axial length in a different way? I think you have to take the specification at face value, but it says what you want to do is have equal lengths and therefore maximize it. It doesn't say maximize one over the other. Your Honor, I think the really... One taper, really, right? It is, yes. And the recess has to be within the taper. It cannot be outside it or they're not in the presence of the other. We have to give meaning to... Not in the presence of the other? I thought there was an agreement on appeal here that juxtapose means nearby each other. That's right, juxtapose. But there's more to the claim language than that. Stryker wants to focus just on juxtapose, which we say, okay, nearby, but there's more to it. It also says in the presence of the other, and if you read the specification where it says one and the other, it's the presence doesn't compromise the other. And where is that? It's because it's within the taper. Where are you in the specification where you find that? It's that same paragraph in column seven. Okay, so you're still in the preferred embodiment? Your Honor, there is only an embodiment or two embodiments that show the same thing, which is essentially midway. Whether or not that's a preferred embodiment, it is the embodiment in the patent. The language in the preferred embodiment is used in the middle of the paragraph to describe the angle and the preferred material. And I don't think you can assume because anything that follows that throughout the following columns of the patent is all of a sudden the preferred embodiment. So if we're looking at that in column seven, it says that the two segments... What line are you at? I'm at column seven and line 16, having generally the same and therefore maximized axial length. All right, you're still not helping me. So we have to conclude that because this preferred embodiment describes this, that by definition that's the end of the inquiry. I mean... No, Your Honor, it's certainly not that. We're trying to figure out, first of all, what in the presence of the other means, which is not a readily understandable term. Okay, so where in the specification other than that is there any discussion of in the presence of the other? Well, if you continue on to the end of that particular paragraph in column seven, it talks about subsequently attaining the desired locking engagement with the seating surface is not the effect of the taper, and it uses the word presence. Presence doesn't mean somewhere outside. We're just back to nearby and then the rest of this claim line, which doesn't mean anything. So now you're asking us to read presence to mean in the presence... I'm in the presence of my colleagues here, but we're not butted up against each other. So you're asking us to read presence to mean that they have to be inside of each other? That's what is shown. The recess is shown inside the taper. It's not shown anywhere else. It's not shown outside the taper. It's not shown somewhere else on the shell. That's where it's shown. And the whole purpose of this description is by putting the recess within the taper, you don't want to compromise the taper. That's the point of this invention. Why couldn't the recess be a quarter of the way instead of midway? It could be, but then you have to look at the other claim language, which says they have to be at relative locations such that their effectiveness is maintained while in the presence of the other. Where do we learn that? The specification not only tells you how, but it tells you why. Put it essentially midway. It doesn't say a quarter of the way will work. It doesn't say one end of the other will work. It says this is the way that works. And to give meaning to that language, you come to essentially midway, which is what the district court judge did. You do appreciate that there's nothing in the claims that sounds like what the district court read into it. Well, I will agree that the judge used different words. And I think that's part of the problem with using this type of vague claim language when you use relative locations such that their effectiveness is maintained. If all that means is it has to work, then it's a meaningless limitation. If all it means is in the presence of one another means is that it has to be somewhere on the same device, that's a meaningless limitation, and we're just back to nearby, and that means nothing. Now, if I could just turn briefly to the tapered securement terms, here I disagree that the hard bearings, the important parts are the shell and the bearing. There's no doubt about it. Well, let's look at the claims, and that's part of my concern. If you look at the amended claims, 41, that's the amended one. And let's compare that to the original claim one. In other words, you can see that where they wanted to claim a three-part mechanism, they knew how to claim a three-part mechanism. And yet, claim 41 doesn't expressly do that. It does not expressly do that, but it uses the words compatible with. And here again, we have another phrase that compatible with doesn't mean something or does it not. If it means something, we have to figure out from the specification what it means. If it means it just has to work, then again, this is a meaningless limitation. So what is compatible with? Well, you might think, well, they have to mate together, but that's not described in the patent. The only thing that's described in the patent for these hard bearings is that you use a sleeve to accomplish the mating so that they're compatible with each other. Otherwise, compatible with means they work, and that's not a limitation. I'll let Mr. Lenny continue unless the court has any questions. Good morning. Brad Lenny for Defendant Smith and Nephew. May it please the court. As Smith and Nephew just joined on the relative locations claim construction issue, that's what I'm here to focus on today and just to follow up on a couple of things. Speak up a little, would you please, sir? Sure, Your Honor. The Smith and Nephew, it doesn't use the sleeve. That's correct. We actually do use the sleeve in ours, so we're not addressing that issue on appeal. The parties disagree on a fundamental issue with respect to the relative location language, and that's whether or not this language is ambiguous or not. That's the key point here is that there is no plain and ordinary meaning as to what limitations are required and how this terminology restricts the scope of the claim. It renders an uncertain claim scope. They try to distinguish the world class case by saying without explanation that this disputed language is plain on its face, and we submit that it's not. It's very important to recognize that there are really three requirements juxtaposed, which we agree on means nearby, and that the other two requirements are linked together. There are two requirements. I think we get the ambiguous versus non-ambiguous argument, and we need to look at the specification to determine what the point is. Clearly, the point is maximizing the axial length of the taper, right? Isn't that one of the key points? You've mentioned that a few times, and that is a point, but again, that is not what the specification says. If we look at the key part of the specification, and again, I'm in column seven and starting at line 10. It says by placing the recess essentially midway between the upper end and the lower end of the taper, so you now have two taper segments and essentially midway. Then you facilitate the engagement in the seating surfaces, and I'm down at line 14. By virtue of the locking being accomplished among segments 116 and 118, and 116 and 118 are the segments on the shell, and having the same and therefore maximized axial length. We can't overlook the fact that the specification doesn't just say that you're maximizing the axial length of the two taper segments. It says that they have to have the same and therefore maximized axial length. The only way that you have the taper segments being the same and therefore maximized axial length is to put the recess essentially midway. I think it's disingenuous when in their brief, in their blue brief on page 49, Stryker argues that the patent teaches that the components are best secured by maximizing the length of the taper zone. It mentions maximize the axial length of the taper zone, but it also expressly teaches that the key is having both of those taper segments have the same and maximized axial length. They've completely dropped that requirement that they be the same. So if you have to have the same and therefore maximized axial length of the taper segments, you can't have the recess biased towards one edge or the other. This is the key point here. By including this claim language that says that the first and second securing elements have to be placed at relative locations. And your answer for why it's okay for us to limit the claim in this way, even though this discussion is in a preferred embodiment, is what? Two points. First, I don't agree that it's a preferred embodiment. I think that the section of the specification referring to the preferred embodiment is a sentence before this and deals with a completely different description of the invention. The angle of the taper and the fact that it's titanium. And that's column seven, beginning on line five. The next sentence that starts, it's completely not talking about the angle or the material. It now talks about the relative locations of the two locking mechanisms. And again... But it's also a factual concession, wherever it's located, that in order to maximize it has to be midway. That's right. And that's what it says. And all of this language that I'm talking about was added in the CIP. So the preferred embodiment sentence was in the original application. If they had wanted to specify that this description of the relative locations of the two locking mechanisms was a preferred embodiment, they could have added another prefatory introduction by saying, in another preferred embodiment, here's what we're going to talk about the preferred embodiment for the two locking mechanisms. But again, I don't think it's dispositive as to whether or not it's a preferred embodiment. The point is, this is the only embodiment that's disclosed on how you can maintain the effectiveness of the two locking mechanisms when one is in the presence of the other. And I think it's important to understand that those two are linked. So it's not that you simply have to have two locking mechanisms that are effective, and then you have to have the two locking mechanisms being in the presence of another. What it's saying is, when you're in the situation where you have one locking mechanism in the presence of the other, and I'll explain why that requires the groove to be within the taper. When you've got that situation where you're having the groove within the taper, the way to do that, to maintain the effectiveness, is to have it in the middle. Because when you have it in the middle, you maximize the length by having the same length taper segments. You can't have the groove outside the taper, can you? Yes, in theory you could. They did not claim that. By invoking this claim language, they're talking about having the groove in the presence of the taper. And the key point here is at the very end of this paragraph. Column 7 clearly says it has to be within the taper. That's what it's talking about. This entire language about how you can locate these two locking mechanisms together and still have them work is addressing the situation where the groove is within the taper. The key point is the very last sentence. We know from the allegedly infringing devices that they don't have to be, that it doesn't have to be within the taper. Agreed. But again, the perspective is construing the claim language from the perspective of a person of origin, skill, and the art at the time the invention was disclosed. To the extent others, years later, found out that there were other ways that you could have the two locking mechanisms configured, that's beside the point. It's what the inventors described at the time of the invention. All we have to go by is the specification. There's nothing in the specification that indicates that they contemplated it as being part of their invention. Any other configuration other than the configuration where it's essentially midway. No other disclosure. We've gone over your time. I gave you extra time because I gave extra time to your friend on the other side. Do you want to wrap up? Just a quick point on claim differentiation. Again, claim differentiation, we understand that it's a presumption, but it is just a tool. It's not a rigid rule. I would submit that the 1967 case from the Court of Federal Claims that's been cited approvingly by this court in numerous decisions is instructive here. Again, claim differentiation is a guide, not a rule. If a claim will bear only one interpretation, similarity will have been tolerated. We submit that this language bears one. I know. Everybody argues claim differentiation when it suits them and then tells us to disregard it when it doesn't, but okay, thank you. Your Honor, to pick up where counsel left off, essentially midway is a preferred embodiment. You don't have to rely on me for that. That is what the defendant said in the district court. It's in the record at A4614. We talk about it at page 18 of our reply brief. This idea that essentially midway is not simply disclosure and preferred embodiment is a creation of the appeal and it's incorrect. We get to decide whether that's the case or not. He's making the argument that the preferred embodiment language there, even though it's in the same paragraph, is really just talking about the construction or what the material is that's at issue and what the size of the angle. Isn't it at least arguable that the rest of this is not preferred embodiment language? They clearly make the argument, so I guess it's arguable, but I don't agree with the argument, Your Honor. Here's why. That preferred embodiment sentence was the last sentence of the paragraph in the paragraph that's originally written. The entire remainder was added to it as part of the CIP process. They added it knowing that preferred embodiment was there. They added it knowing that preferred embodiment was going to be there from there through the end of the paragraph. Had they wanted it to be something other than the preferred embodiment, they could have made it a new paragraph. What was added at the same time as this paragraph was added to the CIP were the dependent claims that talk about, essentially, Midway. That, Your Honor, I think indicates that, essentially, Midway was always intended to be a preferred embodiment because it was only added as part of the dependent claims, not as part of the independent claims. Had this not been a preferred embodiment, it would have been part of the independent claims. Incorporating the preferred embodiment is the, what is it, third rail of patent law claim construction, that's true. But if you only have one preferred embodiment and you have an ambiguity that can only be understood in light of the description of the preferred embodiment, do you think it's reasonable to make an exception to take that description without necessarily incorporating the preferred embodiment? Well, I think that preferred embodiment, and the use of preferred embodiment in this case is different than what this court has contemplated as permitting limitations on the claims, additional limitations on the claims. Because where it is only, where the only factor, the only indicia that you add a limitation is the preferred embodiment, this court has typically held that you can't read the preferred embodiment in. What typically happens, and this is true of every case that the defendants have cited here, is that there's more. There's a statement that the limitation is the present invention. There is amendment around prior art that is based on that preferred embodiment. There is more. You even suggested a new paragraph would have done the job. Well, in terms of trying to determine whether it actually is a preferred embodiment, yes. I think a new paragraph would have been a much more clear way to do it, but I rely mainly on two other things, Judge, and that is that treating it as a preferred embodiment is consistent with its presence only in the dependent claims, and my colleagues agreed with me in the district court below with my assessment. If we find the language of the claim to be ambiguous, where else in the specification do we understand how to maintain the structure's effectiveness? Well, in the specification, I think that language in column seven, although it talks about a preferred embodiment, it does have the reference to axial length, which tells you that the axial length is one of the keys to the effectiveness. That same language talks about the groove being between two pieces of the taper. It does, and that was clearly the preferred embodiment. That's clearly what the inventors, in this case, were teaching as a preferred embodiment. So the same language is the preferred embodiment that we can't incorporate, but it's also the language that teaches us what the words mean. Well, I would say it's different in this respect, Your Honor, is that what it does by making the reference to maximizing the axial length is it tells the person of skill and the art what it is about the placement of the groove that's important along the taper. It provides the rationale for this inventor's selection of the particular preferred embodiment. So it's giving a factor that is used in determining the axial length. Okay.  Thank you very much, Your Honor. The case will be submitted.